```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                CIVIL NO. 19-1219(DSD/TNL)
```

Kristine M. West,

       Plaintiff,

v.                                                    ORDER

Townsquare Media, Inc.,
a Delaware corporation,

       Defendant.

    Mark J. Peschel, Esq. and Eastlund Hutchinson Ltd., 4200 County Road 42 West, Savage, MN 55378, counsel for plaintiff.

    Bradley R. Prowant, Esq. and Larson King LLP, 30 E 7th Street, Suite 2800, St. Paul, MN 55101, counsel for defendant.

This matter is before the court upon defendant Townsquare Media, Inc.'s motion for summary judgment. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is denied.

**BACKGROUND**

This negligence dispute arises out of an injury plaintiff Kristine West suffered in August 2017 while attending defendant's WE Fest, a three-day country music festival held at the Soo Pass Ranch in Becker County, Minnesota. Compl. ¶¶ 5-6; see also K. West Dep. 108:20-22. Defendant is not the owner of the Soo Pass Ranch, but assumed control of the premises during WE Fest 2017.

Prowant Decl. Ex. A, at 2. The concert venue is surrounded by different campgrounds, including the Northwoods campground, which wraps around the north side of the concert venue from west to east. See K. West Dep. 101:13-102:13. Within the concert venue, there are stages on the north end and concession and souvenir stands on the south end. Id. at 105:1-12. There are two entrances to the concert venue from the various campgrounds, one on the east side and one on the west side. Id. at 114:17-18.

West had attended WE Fest every year starting in 2015, and attended in 2017 with her husband, her daughter, and her daughter's boyfriend. Id. at 101:3-7, 103:23-104:2. West always camped in the Northwoods campground, but in previous years had camped on the west side of the campground. Id. at 102:4-9. In 2017, West and her family camped on the east side of the Northwoods campground. Id. at 102:18-20. On the first day of concerts, West entered through the west gate to watch the evening performances. Id. at 109:10-19, 114:13-20. After the concerts ended around 10:00 p.m., West exited through the east gate to head back to her campsite. Id. at 117:4-11. There were so many people exiting through the east gate at that time that West could not see the ground. Id. at 117:19-20.

The next day, West and her family went to the concert venue to shop for souvenirs around midday. Id. at 106:20-107:3. Shortly

2

after midday, they exited through the east gate to go back to their campsite. Id. at 110:4-20. They were walking in a line across the pathway, with West between her daughter and her daughter's boyfriend. Id. at 111:2-5. Another group of people were walking roughly three feet ahead of West's group. Id. at 120:17-21. As West was walking, she stepped into a hole and rolled onto the side of her foot and ankle. Id. at 112:2-14, 113:6-7. West's daughter and her daughter's boyfriend caught West so that she did not fall to the ground. Id. at 111:2-5.

After regaining her balance, West and her family turned around and noticed a hole in the pathway. Id. at 118:1-4. In her deposition, West described the hole as being "about a foot" wide and four inches deep. Id. at 118:5-9. The walkway that she was on was black asphalt, and West testified that the hole had dirt in it. Id. at 118:22-24, 119:7-9. West's husband testified that the hole was roughly three to four inches wide and one to two inches deep. T. West Dep. 23:10-22. He stated that both the hole and the pathway were black. Id. at 37:18-38:2. West's daughter testified that the hole "blended in right with all the other ground that was there and we really couldn't tell it was there at all." L. West Dep. 32:11-23. West's daughter further testified that she "look[s] at the ground in front of me" when she is walking, but that she did not see the hole before her mother tripped in it.

3

Id. at 26:24–27:1, 33:19–23.  Neither West nor her husband saw the hole before she tripped either.  K. West Dep. 12:9–16; T. West Dep. 21:17–18, 24:20–24.

After she tripped, West reported the hole to a security guard. K. West Dep. 127:4–9.  When the Wests returned to WE Fest in 2018, they noticed the hole was still there and took a picture of it. See Prowant Decl. Ex. C.; Def.'s Mem. Opp. Summ. J. at 3.  The hole is visible in the photograph, however there is no evidence in the record that the hole as depicted in the photograph looks the same as it did in 2017.[1]  Since tripping in the hole at WE Fest, West has had three surgeries on her foot to repair damage allegedly caused by the incident.  K. West Dep. 45:1–7.

West filed suit on May 7, 2019, seeking damages based on defendant's alleged negligence in failing to warn of or repair the hole.  ECF No. 1.  The parties engaged in discovery, and defendant now moves for summary judgment.

---

[1] West produced the photograph in response to a request to produce "all photographs ... related to the incident alleged in the Plaintiff's complaint."  See Prowant Decl. Ex. C.  West maintains that the photograph relates to the incident because it is a photograph of the hole taken a year later, but denies any admission that the photo depicts the hole as it appeared the day she fell.  Pl.'s Mem. Opp. Summ. J. at 3–4.  Neither West nor any members of her family were asked about the photograph in their depositions.

4

**DISCUSSION**

**I.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II. Negligence

Under Minnesota law, a defendant is entitled to summary judgment in a negligence action "when the record reflects a complete lack of proof on any of the four elements necessary for recovery: (1) the existence of a duty of care, (2) breach of that duty, (3) an injury, and (4) the breach of that duty being the proximate cause of the injury." Louis v. Louis, 636 N.W.2d 314, 318 (Minn. 2001).  At issue here is whether defendant owed a duty to protect West from any danger caused by the hole in the walkway.

A landowner, or in this case a possessor of property,[2] "has a duty to use reasonable care for the safety of all such persons invited upon the premises."[3]  Id. (citing Sutherland v. Barton, 570 N.W.2d 1, 7 (Minn. 1997) (internal quotation omitted).  The scope of that duty "is defined by the probability or foreseeability of injury to the [entrant]." Gilmore v. Walgreen Co., 759 N.W.2d

---

[2] Defendant concedes that, although it does not own the Soo Pass Ranch, it assumed control of the premises during WE Fest 2017 and thus a traditional premises liability analysis is applicable here.  Def.'s Mem. Supp. Summ. J. at 6 n.3.

[3] West argues that defendant is the "proprietor of a place of public amusement for profit," and that the reasonable care standard is therefore a heightened one requiring "active vigilance in protecting [defendant's] patrons against perils."  Pl.'s Mem. Opp. Summ. J. at 12 (quoting Hanson v. Christensen, 145 N.W.2d 868, 873–74 (1966)).  Because the court holds that summary judgment is not appropriate even under the normal reasonable care standard, it need not decide at this juncture whether WE Fest is a place of public amusement subject to the heightened standard outlined in Hanson.

433, 435 (Minn. Ct. App. 2009) (citing Hanson v. Christensen, 145 N.W.2d 868, 874 (Minn. 1966)). Likewise, an entrant has a duty to use reasonable care for her safety while on the premises. See Peterson v. Balach, 199 N.W.2d 639, 647 (Minn. 1972).

Minnesota has adopted the rule set out in the Restatement (Second) of Torts § 343A (1965), which states that "[a] possessor of land is not liable to his invitee for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." See Louis, 636 N.W.2d at 319. To determine whether a condition is obvious, courts use an objective test asking whether the danger "was in fact visible" to a person "exercising ordinary perception, intelligence and judgment." Id. at 321. The questions of whether a dangerous condition is obvious or whether the possessor could anticipate harm from an obvious danger are generally, but not always, ones of fact left to the jury. See Olmanson v. LeSueur Cty., 693 N.W.2d 876, 881 (Minn. 1995); cf. Louis, 636 N.W.2d at 322 (remanding to the district court to decide whether it can, as a matter of law, determine that a danger was obvious or that the possessor should still have anticipated harm despite the obviousness).

Defendant argues that it is protected from liability in this instance because the hole presented an obvious danger that West

should have avoided. West contends that the hole was not an obvious danger and that defendant should have anticipated someone may still hurt themselves regardless of whether the hole was obvious. Both parties cite to numerous Minnesota cases in support of their positions.

Defendant relies most heavily on Spinler v. City of Brownsdale, in which the court determined that the hole in which plaintiff tripped and injured herself was obvious as a matter of law, thus relieving the defendant of its duty to warn or repair. No. A19-1782, 2020 WL 3172847, at *4-5 (Minn. Ct. App. June 15, 2020). There, although the plaintiff had testified that she could not see the hole because vegetation covered it, a photograph of the hole taken shortly after the accident established that the hole "was clearly evident to anyone who would have looked at the sidewalk." Id. at *4.

Defendant argues this case is analogous because the photograph taken in 2018 shows that the hole was visible to anyone who would have looked down at it. The court, however, is not convinced. Although the hole is visible in the photograph, unlike the photograph in Spinler taken shortly after the incident, this one was taken a year after the incident in which West injured herself. The record is devoid of any testimony stating that the photograph depicts the hole as it appeared on the day of the

8

accident.  Therefore, it cannot be said that, based on the photograph, the hole was an obvious danger as a matter of law.

Defendant also points to West's testimony that the hole was "about a foot" wide and four inches deep in support of its argument that the hole was obvious.  Taking all of the deposition testimony in the light most favorable to West, however, it is clear that there is a genuine issue of material fact as to how visible the hole was.  West's husband testified that the hole was three to four inches wide and "maybe an inch or two" deep.  He further testified that both the hole and the pathway in which the hole was located were black.  West's daughter testified that the hole "blended in right with all the other ground that was there and we really couldn't tell it was there at all."  Based on this testimony, the court cannot conclude that the hole was obvious as a matter of law.

Even if the court were to conclude that the hole was an obvious danger, there still exists a genuine issue of material fact as to whether defendant should have anticipated that someone might trip in the hole despite its obvious nature. In <u>Gilmore v. Walgreen Co.</u>, a Walgreens patron tripped on an empty pallet left on the floor.  759 N.W.2d 433, 434 (Minn. Ct. App. 2009).  He had just asked an employee a question about where an item was and was walking toward where the employee pointed at the time he fell.

9

Id. The Minnesota Court of Appeals reversed the grant of summary judgment in favor of Walgreens after determining that, although the pallet was an obvious danger, there remained a question as to whether Walgreens should have anticipated that the customer's "attention may be distracted, so that he will not discover what is obvious ...." Id. at 436 (quoting Restatement (Second) of Torts § 343A cmt. f (1965)). Similarly, in Rinn v. Minnesota State Agricultural Society, the Minnesota Court of Appeals held that a visible puddle on a step was not an obvious danger as a matter of law, pointing to the possibility that someone would fail to notice the danger because they were distracted by other things happening around them. 611 N.W.2d 361, 364 (Minn. Ct. App. 2000). Here, West points to the fact that she was walking and talking with family, and was following closely behind another group of concertgoers, as evidence that defendant should have realized that people may not notice the hole. As the court cannot say that these alleged distractions are out of the ordinary for a concertgoer, under Gilmore and Rinn there is a genuine issue of material fact as to whether defendant should have anticipated that the hole could cause harm to someone who did not notice it.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment [ECF No. 38] is denied; and

2. The parties are instructed to contact Magistrate Judge Leung's chambers to schedule a settlement conference before this matter is set for trial.


Dated: October 20, 2020

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court